1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    MADISON L.,[1]

8                      Plaintiff,

9         v.

10   KILOLO KIJAKAZI,

11                     Defendant.

Case No.  20-cv-06417-TSH

**ORDER RE: CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

Re: Dkt. Nos. 28, 34

12
13

## I.    INTRODUCTION

14        Plaintiff Madison L. moves for summary judgment to reverse the decision of Defendant

15   Kilolo Kijakazi, Acting Commissioner of Social Security, denying Plaintiff's claim for disability

16   benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 28.

17   Defendant cross-moves to affirm.  ECF No. 34.  Pursuant to Civil Local Rule 16-5, the matter is

18   submitted without oral argument.  Having reviewed the parties' positions, the Administrative

19   Record ("AR"), and relevant legal authority, the Court hereby **DENIES** Plaintiff's motion and

20   **GRANTS** Defendant's cross-motion for the following reasons.[2]

21               ## II.    PROCEDURAL HISTORY

22        On November 20, 2017, Plaintiff filed an application for Social Security Disability

23   Insurance and Supplemental Security Income benefits.  AR 216-32.  The application was initially

24   denied on February 6, 2018, and again on reconsideration on March 6, 2018.  AR 126-32.  An

25
26

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
recommendation of the Committee on Court Administration and Case Management of the Judicial
Conference of the United States.

27   [2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF

28   Nos. 11, 14.

United States District Court
Northern District of California

1    Administrative Law Judge ("ALJ") held a hearing on May 24, 2019 and issued an unfavorable

2    decision on October 2, 2019.  AR 15-25, 30-69.  The Appeals Council denied Plaintiff's request

3    for review on July 9, 2020.  AR 1-6.  Plaintiff seeks review in this Court pursuant to 42 U.S.C. §

4    405(g).

5                            **III.   ISSUES FOR REVIEW**

6            Plaintiff raises four issues on appeal: (1) whether the ALJ gave specific and legitimate

7    reasons for rejecting the opinions of Dr. Ritvo, her treating psychiatrist; (2) whether the ALJ gave

8    specific and legitimate reasons for rejecting the opinion of Dr. Martin, the consultative examining

9    psychologist; (3) whether the ALJ's RFC finding is based on substantial evidence and the correct

10   legal standards; and (4) whether the ALJ failed to give clear and convincing reasons for rejecting

11   her testimony.

12                           **IV.   STANDARD OF REVIEW**

13           42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision

14   to deny disability benefits, but "a federal court's review of Social Security determinations is quite

15   limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "An ALJ's disability

16   determination should be upheld unless it contains legal error or is not supported by substantial

17   evidence."  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted).

18   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

19   support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019)

20   (simplified).  It means "more than a mere scintilla, but less than a preponderance" of the evidence.

21   *Garrison*, 759 F.3d at 1009 (citation omitted).

22           The Court "must consider the entire record as a whole, weighing both the evidence that

23   supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

24   simply by isolating a specific quantum of supporting evidence."  *Id.* (citation omitted).  "The ALJ

25   is responsible for determining credibility, resolving conflicts in medical testimony, and for

26   resolving ambiguities."  *Id.* at 1010 (citation omitted).  If "the evidence can reasonably support

27   either affirming or reversing a decision," the Court may not substitute its own judgment for that of

28   the ALJ."  *Id.* (citation omitted).

United States District Court
Northern District of California

2

United States District Court
Northern District of California

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* at 1115 (simplified). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-Hunter*, 806 F.3d at 492. The Court is "constrained to review the reasons the ALJ asserts." *Id.* (simplified).

## V.    DISCUSSION

### A.    Framework for Determining Whether a Claimant Is Disabled

A claimant is considered "disabled" under the Social Security Act if two requirements are met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that the claimant is unable to perform previous work and cannot, based on age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and citation omitted). Here, the ALJ determined Plaintiff had not performed substantial gainful activity since June 15, 2017. AR 18.

At step two, the ALJ decides whether the claimant's impairment or combination of

3

1   impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

2   claimant's 'physical or mental ability to do basic work activities.'"  *Ford*, 950 F.3d at 1148

3   (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

4   20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

5   impairments: schizoaffective disorder, depression, anxiety, and bipolar disorder.  AR 18.

6        At step three, the ALJ evaluates whether the claimant has an impairment or combination of

7   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

8   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

9   describe impairments that are considered "to be severe enough to prevent an individual from doing

10  any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

11  medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

12  "For a claimant to show that his impairment matches a listing, it must meet all of the specified

13  medical criteria.  An impairment that manifests only some of those criteria, no matter how

14  severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

15  claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

16  to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

17  age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff

18  did not have an impairment or combination of impairments that meets the listings.  AR 18.

19       If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

20  the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

21  despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

22  perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

23  that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

24  it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

25  perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ found

26  that Plaintiff retains the RFC to:

27           perform a full range of work at all exertional levels but with the
             following nonexertional limitations.  She is able to understand,
28           remember and perform simple, routine and repetitive tasks involving

4

> simple, work-related decisions, and she is able to adapt to routine workplace changes. She can tolerate occasional interaction with supervisors and coworkers, and brief, occasional contact with the public. She would need to work in a low-stress work environment, defined as requiring only occasional decision-making, occasional use of judgment, few, if any, changes in the work setting, and no production-rate or fast-paced work. She can work in proximity to others, but with only occasional interaction with others, and no tandem jobs requiring cooperation with other workers to complete the task. She may miss work up to one day per month but would not consistently miss on day every month.

AR 19. Relying on the opinion of a vocational expert, who testified that an individual with such an RFC could perform other jobs existing in the economy, including floor waxer, kitchen helper, and cleaner, the ALJ concluded that Plaintiff is not disabled. AR 24-25. Based on this RFC, the ALJ determined Plaintiff could not perform past relevant work. AR 23.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted). "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles ("DOT").[4] *Id.* Here, relying on the opinion of a vocational expert, who

---

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of

5

United States District Court
Northern District of California

testified that an individual with such an RFC could perform other jobs existing in the economy, including floor waxer, kitchen helper, and cleaner, the ALJ concluded that Plaintiff is not disabled. AR 24-25.

## B.      Medical Opinions

### 1.      Legal Standard

As a preliminary matter, Plaintiff argues the ALJ must provide "clear and convincing reasons" or "specific and legitimate reasons" for rejecting a treating or examining physician's opinion. Pl.'s Mot. at 2-3. However, Plaintiff filed her claim on November 20, 2017. For benefits applications filed after March 27, 2017, the Social Security Administration's regulations and several Social Security Rulings regarding the evaluation of medical evidence have been amended.

Prior to the current regulations, Ninth Circuit law held that an ALJ must provide clear and convincing reasons to reject a treating physician's uncontradicted opinion and must provide specific and legitimate reasons to reject a treating physician's contradicted opinion. *See Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). However, under the current regulations, "the Commissioner 'will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion.'" *V.W. v. Comm'r of Soc. Sec.*, 2020 WL 1505716, at *13 (N.D. Cal. Mar. 30, 2020) (quoting 20 C.F.R. § 416.920c(a)); *see also* 20 C.F.R. § 404.1520c(a); *P.H. v. Saul*, 2021 WL 965330, at *3 (N.D. Cal. Mar. 15, 2021) (noting that the 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017); SSR 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions"). Some district courts have continued to apply the "clear and convincing" and "specific and legitimate" standards as a "benchmark against which the Court evaluates [the ALJ's] reasoning." *See, e.g., Kathleen G. v. Comm'r of Soc. Sec.*, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020). Others, including courts in this district, have not. *See, e.g., V.W.*, 2020 WL

---

information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1). The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

1505716, at *13; *Timothy Mitchell B., v. Kijakazi*, 2021 WL 3568209, at *5 (C.D. Cal. Aug. 11, 2021); *Agans v. Saul*, 2021 WL 1388610, at *7 (E.D. Cal. Apr. 13, 2021)).

"It remains to be seen whether the new regulations will meaningfully change how the Ninth Circuit determines the adequacy of an ALJ's reasoning and whether the Ninth Circuit will continue to require that an ALJ provide 'clear and convincing' or 'specific and legitimate reasons' in the analysis of medical opinions, or some variation of those standards." *Joseph Perry B. v. Saul*, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021) (citing *Patricia F. v. Saul*, 2020 WL 1812233, at *3 (W.D. Wash. Apr. 9, 2020)). However, the Ninth Circuit has recognized that the Social Security Administration may, by regulation, override the court's own prior interpretations of the Act. In *Lambert v. Saul*, the Court of Appeals addressed the conflict between its precedent establishing a presumption of continuing disability after a prior disability determination and the SSA's interpretation of the 1983 Reform Act, which found that no such presumption was available under the statute. 980 F.3d 1266, 1268 (9th Cir. 2020). In deferring to the agency's interpretation despite its own contrary precedent, the *Lambert* court noted that there are limited circumstances in which a court's own precedent is not controlling, and the court is in fact required to depart from it. *Id.* "Those circumstances include the intervening higher authority of an administrative agency's authoritative and reasonable interpretation of a statute." *Id.* Finding first that the SSA's interpretation was entitled to deference, the Court of Appeals further concluded that "the SSA's authoritative interpretation of the Social Security Act displaces our prior precedents on the issue of a presumption of continuing disability." *Id.* at 1275. Given the Ninth Circuit's holding in *Lambert*, the Court finds "it must defer to the new regulations, even when they conflict with judicial precedent." *Timothy Mitchell B.*, 2021 WL 3568209, at *5; *Agans*, 2021 WL 1388610, at *7).

Under the current regulations, the Commissioner must evaluate the persuasiveness of all medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. 20 C.F.R. § 404.1520c(a), (c)(1)-(5), §

United States District Court
Northern District of California

416.920c(a), (c)(1)-(5).  "The two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that 'form the foundation of the current treating source rule.'"  *V.W.*, 2020 WL 1505716 at *13 (quoting Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853).  When evaluating medical opinions, the Commissioner "may, but [is] not required to," explain how the Social Security Administration considered the remaining factors listed in paragraphs (c)(3) through (c)(5) of the regulations, as appropriate.  20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'"  *V.W.*, 2020 WL 1505716 at *14 (citation omitted; brackets in original).  "Further, the ALJ is required to specifically address the two most important factors, supportability and consistency."  *Id.* (citing 20 C.F.R. § 416.920c(b)); *see also* 20 C.F.R. § 404.1520c(b).

### 2.    Dr. Ritvo

On February 20, 2018, David Z. Ritvo, M.D., completed a one-page "Medical Source Statement, Psychiatric" form, opining that Plaintiff had mild limitations in performing simple tasks, moderate limitations in receiving and carrying out instructions from supervisors, marked limitations in interacting with the public and co-workers, and extreme limitations in dealing with workday stress and pressures.  AR 390.  On April 11, 2019, Dr. Ritvo completed the same form, this time opining that Plaintiff had marked or extreme limitations in all functional areas.  AR 425. Dr. Ritvo indicated in his April 2019 opinion that the assessed limitations were based on Plaintiff's functioning "when most de-stabilized."  *Id.*

The ALJ found Dr. Ritvo's opinions "somewhat persuasive" to the extent the doctor indicated that Plaintiff could perform simple tasks and required limited social interaction and a low stress work setting.  AR 22.  However, the ALJ found unpersuasive Dr. Ritvo's assessment of greater functional limitations in his April 2019 opinion, finding it was not supported by his progress notes, "which indicate that the claimant was generally stable on medication," as well as Plaintiff's activities, including earning an associate's degree and traveling abroad.  *Id.*

United States District Court
Northern District of California

1    Plaintiff argues the ALJ erred because she did not specify which of Dr. Ritvo's progress

2    notes contradicted his 2019 opinion.  Pl.'s Mot. at 5.  She further argues that, although she earned

3    an associate's degree, she earned it over a year before her alleged onset date of disability and,

4    although she had to take only four classes, it took her three semesters to accomplish this.  *Id.*

5    Plaintiff also argues that her trip abroad "took place during a period when Plaintiff was stabilized,

6    this trip lasted only eight days, she was accompanied by her boyfriend and there is no information

7    regarding whether any of the demands of the trip were made of Plaintiff alone."  *Id.*

8        In evaluating Dr. Ritvo's opinions, the Court finds the ALJ properly considered how well

9    supported the opinions were and their consistency with other evidence in the record.  Regarding

10   supportability, the ALJ noted that Dr. Ritvo did not explain the bases for the ratings he assessed or

11   provide objective evidence to support the significant limitations he endorsed.  AR 22; *see* 20

12   C.F.R. § 404.1520c(c)(1) (2017) ("The more relevant the objective medical evidence and

13   supporting explanations presented by a medical source are to support his or her medical opinion(s)

14   or prior administrative medical finding(s), the more persuasive the medical opinions or prior

15   administrative medical finding(s) will be.").  Dr. Ritvo commented that his April 2019 opinion

16   was based on Plaintiff's functioning "when most de-stabilized" (AR 425), but this statement does

17   not bolster the opinion because RFC is the most a claimant can do, whereas Dr. Ritvo expressly

18   opined as to the least Plaintiff could do.  *See* 20 C.F.R. § 404.1545(a)(1) (RFC is "the most [a

19   claimant] can still do despite [her] limitations"); Social Security Ruling ("SSR") 96-8p ("RFC

20   does not represent the least an individual can do despite his or her limitations or restrictions, but

21   the *most*.") (emphasis in original).  The ALJ emphasized this point, explaining that the assessed

22   RFC "indicates the most that [Plaintiff] could do despite her impairment-related limitations."  AR

23   23.  Accordingly, the ALJ appropriately found that Dr. Ritvo's opinion was unsupported.

24       Regarding consistency, the ALJ explained that Dr. Ritvo's opined limitations were

25   inconsistent with other evidence in the record, including his own treatment notes.  AR 22; *see* 20

26   C.F.R. § 40.1520c(c)(2) (2017) ("The more consistent a medical opinion(s) or prior administrative

27   medical finding(s) is with the evidence from other medical sources and nonmedical sources in the

28   claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will

be."). As detailed in the ALJ's decision, Dr. Ritvo's records focused primarily on medication management and did not reflect significant clinical findings commensurate with the limitations in his opinions. AR 20-21. Instead, treatment notes showed that Plaintiff was generally stable with medication; she did not typically present with notable symptoms; she was reportedly calm, clear, pleasant, and more at ease; and she was able to engage in activities such as exercising, gardening, helping her parents, socializing, and taking trips. *Id.* For example, records that the ALJ considered revealed:

- Plaintiff was "stabilizing well" on medication, she was calm and clear, and she felt more optimistic (AR 376);

- Although Plaintiff was upset about an encounter with a man, who she thought was stalking her, and did not want to go out, she also presented as calm with a bright and clear mood, she was sleeping better, and her stress was better (AR 377-80);

- Plaintiff was helping in the family business, she had worked at a wedding the prior week, she was gardening, and she presented as brighter (AR 383);

- Plaintiff was sleeping well, she was stable, calm, and comfortable, and, although she was not happy, she indicated that was normal (AR 389);

- Plaintiff presented as comfortable and content, and acknowledged that she had always been a loner (AR 392);

- Medications were working well; Plaintiff was exercising, gardening, and helping her parents; she was calm, pleasant, and sleeping okay, and she was "stable on current medication regimen" (AR 394);

- Plaintiff was in good spirits, clear headed, lighter, and happier; she was writing more; she had returned from a good trip and was planning another one; she was stable, relaxed, active, engaged, and bright; she was sleeping well; and her medications were working well (AR 398);

- Plaintiff continued to do well on medications, she was enjoying gardening, and she was taking a trip to Germany (AR 399);

- Plaintiff had a wonderful time on her trip to Germany, she managed well, she was feeling happier, she was more at ease, and her affect was bright (AR 403);

- Plaintiff moved into a casita in the back yard, she was socializing more, her medications were working well, and she was helping out at a florist for short periods (AR 404).

In particular, the ALJ found Dr. Ritvo's opinions were inconsistent with Plaintiff's ability

10

to travel, as referenced above, and obtain an associate's degree, for which she used a computer to take an online class and also attended an in-person class. AR 21-22, 38-39, 48-49. Notably, when taking the in-person class, Plaintiff was able to request help from the instructor and she passed the class without special accommodations. AR 21, 38-39, 48-49. Thus, the ALJ reasonably concluded that Plaintiff was functioning at a higher level than Dr. Ritvo endorsed. AR 22; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (in evaluating medical opinion, ALJ properly considered that the doctor's clinical notes and observations did not support the limitations he assessed).

Plaintiff argues that the ALJ "missed the point" of Dr. Ritvo's 2019 opinion and contends it should be read as showing she would have significant limitations "if she were working in a regular job." Pl.'s Mot. at 4. However, the ALJ did not find that Plaintiff could perform "a regular job," and Dr. Ritvo provided no explanation as to what he meant by his comment about "regular work." AR 425. That Dr. Ritvo thought Plaintiff would have significant limitations and be "most destabilized" when doing "regular work" does not establish any error here, where the ALJ incorporated significant limitations in understanding, remembering, concentration, persistence, social interaction, and stress in Plaintiff's RFC. AR 19; *see Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (ALJ appropriately evaluated opinion that identified significant exertional limitations and indicated that claimant "would be unable to do most, if not all 'regular' jobs"; there was no guidance as to what doctor meant by "regular jobs" and the limitations the doctor identified were not necessarily inconsistent with the restrictions in the RFC finding).

Plaintiff also argues the ALJ's decision is contrary to SSR 85-15, which outlines considerations that may be relevant when an ALJ evaluates whether an individual with a severe mental impairment can perform other jobs that exist in the national economy. SSR 85-15 makes clear that there are no presumptive limitations associated with mental impairments and the evaluation must be performed on "an individualized basis." The ruling goes on to state that impairment-related limitations must be reflected in the RFC assessment. Here, the ALJ's decision comported with SSR 85-15 because she performed an individualized assessment of Plaintiff's

11

United States District Court
Northern District of California

RFC based on record evidence.  AR 19-23.  The RFC finding reflected the limitations that the record supported, including limitations in understanding, remembering, concentration, persistence, social interaction, and stress.  AR 19.  The ALJ included additional RFC restrictions beyond those assessed by the State agency psychologists to account for Plaintiff's testimony about difficulties dealing with others and stress.  AR 22.  Indeed, Plaintiff concedes that her symptoms were "triggered by stress," Pl.'s Mot. at 2, which the RFC addressed.  Further, while Plaintiff contends the ALJ's decision is contrary to SSR 85-15, she provides only a general citation to the ruling and does not identify any specific error.

Plaintiff contends the ALJ did not specify which of Dr. Ritvo's treatment notes were inconsistent with his opinions.  Pl.'s Mot. at 5.  This is incorrect.  The ALJ explained that, contrary to the disabling limitations that Dr. Ritvo assessed, his records typically showed Plaintiff was stable with medication, she did not present with notable symptoms, and she was able to engage in activities inconsistent with disability.  AR 20-22 (citing, *e.g.*, AR 376-80, 383, 389, 392, 394, 398-99, 403-04).  Plaintiff selectively highlights the doctor's comments on her ability to work and to withstand stress (Pl.'s Mot. at 5), but, as noted above, the ALJ's RFC finding accommodated Plaintiff's difficulties with stress, among other things.  AR 19.

Plaintiff downplays her ability to obtain an associate's degree and argues the ALJ should not have relied upon this evidence.  Pl.'s Mot. at 5.  Although Plaintiff now asserts that she obtained this degree before she was disabled, she testified under oath to obtaining this degree just over a year prior to her hearing, when she was allegedly disabled.  AR 38.  Given Plaintiff's sworn testimony, which she and her attorney made no effort to correct, the ALJ reasonably relied upon her statements to find that she was not as limited as Dr. Ritvo opined.  In any event, even excluding such evidence, Dr. Ritvo's treatment notes evidenced that Plaintiff was not as limited as she claimed since she was stable with medication and engaged in activities such as exercising, gardening, helping her parents, socializing, as discussed in the ALJ's decision.  AR 20-21; *see also* 376-80, 383, 389, 392, 394, 398-99, 403-04.

Plaintiff also contends her ability to travel to Germany should not be construed as showing she could function adequately "outside of her sheltered environment."  Pl.'s Mot. at 5.  It is

1  unclear how international travel could be construed as remaining within a "sheltered

2  environment." Moreover, the record reflects she had traveled previously and all of her trips went

3  well, with no documented problems. AR 398-99, 403. The ALJ appropriately found that

4  Plaintiff's ability to take trips when she was allegedly disabled suggested she was not as limited as

5  Dr. Ritvo opined. *See, e.g., Fry v. Berryhill*, 749 F. App'x 659, 661 (9th Cir. 2019) (upholding

6  ALJ's finding that claimant's ability to travel was inconsistent with physician's opinion as to

7  significant limitations in interacting with others) (citing *Molina*, 674 F.3d at 1121).

8          Finally, Plaintiff takes issue with ALJ's finding that Dr. Ritvo's opinions were

9  unsupported. Pl.'s Mot. at 5-6. Notably, she does not dispute that Dr. Ritvo failed to explain the

10  bases for his assessed limitations and provided no objective evidence to support his opinions, as

11  the ALJ found. AR 22. The ALJ explained that "Dr. Ritvo's progress notes, as well as the

12  claimant's above-discussed activities, such as earning an associate's degree and traveling abroad,

13  suggest that she was functioning at a higher level" than Dr. Ritvo opined. *Id.* Substantial

14  evidence supports this finding, as discussed above and in the ALJ's decision. AR 20-21; *see also*

15  AR 376-80, 383, 389, 392, 394, 398-99, 403-04. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th

16  Cir. 2003) (ALJ properly rejected treating physician's opinion where his treatment notes

17  "provide[d] no basis for the functional restrictions he opined should be imposed on [claimant]").

18  Indeed, Plaintiff concedes Dr. Ritvo's treatment notes showed that she was stable and had no

19  major "episodes" after her alleged disability onset date. Pl.'s Mot. at 2. Although Plaintiff alleges

20  she had "bouts of anger and irrational behavior," she "lost track of conversations," and she

21  "scratched her face and body," *id.* at 2, Dr. Ritvo's records do not support such alleged symptoms.

22  Instead, the doctor indicated Plaintiff was stable, calm, pleasant, comfortable, doing well on

23  medications, and engaging in activities inconsistent with disability. *See, e.g.*, AR 376-80, 383,

24  389, 392, 394, 398-99, 403-04. Although Plaintiff argues that the evidence should be weighed

25  differently, this Court may neither reweigh the evidence nor substitute its judgment for that of the

26  ALJ. *See Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

27          Accordingly, the Court must affirm.

28

United States District Court
Northern District of California

13

### 3.    Dr. Martin

On July 2, 2019, Paul Martin, Ph.D., performed a psychological consultative examination. AR 426-33.  Dr. Martin observed that Plaintiff was appropriately dressed with adequate grooming; she was anxious but cooperative; she looked "serious and concerned" but made good eye contact; her language skills were adequate; and her motor functioning was normal.  AR 427.  On mental status examination, Plaintiff was fully oriented (person, place, time, and situation); her mood was reportedly anxious but her affect was congruent; she denied suicidal ideation, hallucinations, or delusions; her attention, insight, and judgment were fair; her memory and fund of knowledge were adequate; she could perform simple calculations; and, although she processed information slowly, her thought processes were linear, organized, and goal directed.  *Id.*  On psychometric testing, Plaintiff's scores ranged from borderline to low average but she had average vocabulary, and her Trail Making Test showed mild to moderate difficulty with sustained attention and mental tracking.  AR 429.  Dr. Martin opined that Plaintiff had mild impairment in performing simple and repetitive tasks and in accepting instructions from supervisors; and marked impairment in the other functional areas assessed.  AR 429-32.

The ALJ found Dr. Martin's opinion partially persuasive to the extent he indicated that Plaintiff had mild limitations but not to the extent he endorsed marked limitations.  AR 22.  In evaluating Dr. Martin's opinion, the ALJ considered how well supported the opinion was and its consistency with other evidence in the record.  Regarding supportability, the ALJ pointed out that Dr. Martin's observations and examination findings did not support his assessment of marked limitations.  *Id.*  Although Plaintiff was anxious and appeared "serious and concerned," her examination was essentially unremarkable otherwise.  AR 22, 427.  The ALJ acknowledged that Plaintiff's psychometric test scores were borderline to low average, but as she explained, the RFC finding accommodated any limitations reflected in Dr. Martin's report by restricting her to simple tasks, routine workplace changes, a low stress environment, and limitations in interactions with supervisors, co-workers, and the public, among other things.  AR 22.

Regarding consistency with other evidence, the ALJ noted that Dr. Martin had not reviewed any medical records and his opinion was inconsistent with other evidence in the record

14

as a whole.  *Id.*  Specifically, treatment notes did not identify persistent, objective findings supporting significant functional limitations but rather showed that Plaintiff was stable, functioned well, and was able to obtain an associate's degree and travel.  AR 21-22; *see also* AR 38-39, 48-49, 376-80, 383, 389, 392, 394, 398-99, 403-04.

Plaintiff argues the ALJ committed error because she concluded her tests were accommodated by the limitations in her RFC finding, but an ALJ, as a lay person, is not qualified to interpret raw medical data and translate it into functional terms.  Pl.'s Mot. at 7 (citing *Nguyen v. Chater*, 172 F.3d 31, 36 (1st Cir. 1999).  Plaintiff's reliance on *Nguyen* is misplaced.  There, the ALJ did not address a provider's ultimate opinion that the claimant was incapacitated by severe pain and no opinion evidence supported the ALJ's RFC finding.  On those facts, the court commented that the ALJ was not qualified to "interpret raw medical data."  *Nguyen*, 172 F.3d at 35.  Here, in contrast, Plaintiff does not point to opinion evidence or objective findings that the ALJ failed to consider and, significantly, the State agency psychologists' findings supported the ALJ's RFC finding.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ's "assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony.").  Regardless, the Ninth Circuit has already rejected Plaintiff's argument in *Bufkin v. Saul*, 836 F. App'x 578 (9th Cir. 2021).  In that case, the court found the ALJ "did not rely on her 'lay interpretation' of medical evidence" but rather "simply summarized the medical evidence from [treating doctors]."  *Id.* at 579.  The Ninth Circuit concluded that "the ALJ properly considered all of the various types of evidence in the medical record, including objective evidence such as x-rays, [claimant's] treatment history, and clinical findings, and properly translated and incorporated this evidence into an RFC finding."  *Id.*; *see also Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").  The ALJ did so properly here, where the RFC was consistent with the State agency psychologists' findings as well as Dr. Ritvo's treatment notes, which showed Plaintiff had some difficulties handling stress but was stable and able to engage in many activities inconsistent with disability.  AR 20-22.

Plaintiff also seems to suggest the ALJ questioned Dr. Martin's diagnosis of schizoaffective disorder.  Pl.'s Mot. at 7 ("In any event, Dr. Martin's opinion and diagnosis of Schizoaffective Disorder are based not only on Plaintiff's test results, but on his interview and examination).  However, the ALJ did not question the diagnosis but instead found Dr. Martin's largely unremarkable examination findings did not support the extreme limitations he assessed. AR 22.  Moreover, a diagnosis does not establish any functional limitations.  *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling") (citation omitted).

Plaintiff takes issue with the ALJ's comment that Dr. Martin did not review any medical records, arguing "[t]his reason should fail because Dr. Martin relied on his own extensive interview, mental status examination and test results."  Pl.'s Mot. at 7.  The ALJ's observation, however, was accurate and calls into question Dr. Martin's statement that Plaintiff's test scores "reflect a significant decline from her presumed level of premorbid functioning."  AR 428.  In other words, because Dr. Martin did not review any medical records, his belief that Plaintiff's functioning had declined was speculative at best.

Finally, Plaintiff disputes the ALJ's finding that Dr. Martin's opinion was inconsistent with the record as a whole.  Pl.'s Mot. at 7-8.  In so arguing, she cites evidence from 2014, which predates her alleged disability onset date by several years, and proffers alternative interpretations of evidence that the ALJ already considered, including her ability to obtain an associate's degree, Dr. Martin's unremarkable examination findings, and Dr. Ritvo's treatment notes.  Although Plaintiff argues that the evidence should be interpreted differently, that is insufficient to establish legal error because the ALJ's findings were reasonable.  *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) ("When the evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision").

Accordingly, the Court must affirm.

### 4.     State Agency Opinions

In January and April 2018 State agency psychologists Nadine J. Genece, Psy.D., and

United States District Court
Northern District of California

Joshua D. Schwartz, Ph.D., found that Plaintiff could understand and remember unskilled job instructions; she could maintain concentration, persistence, and pace for unskilled work during an 8-hour workday and 40-hour work week; she could interact with supervisors and co-workers but needed reduced contact with the general public; and she could adapt to change and stress within the work environment.  AR 77-79, 104-06.

In reviewing Plaintiff's records, Dr. Genece noted she responded well to medication and showed considerable improvement; she had completed an associate's degree; she had been helping in the family business and gardening; she did not present with psychotic symptoms; her activities of daily living were not significantly impaired; field office employees made unremarkable observations, such as Plaintiff had no problems answering questions; and there was no recent evidence of depression.  AR 74-76.

Dr. Schwartz reviewed updated records in completing his assessment.  He noted that Dr. Ritvo's opinion did not include any narrative to support the assessed limitations; treatment notes indicated that Plaintiff's medication was working well and she was stable overall, with some mood impairment and isolation; Dr. Ritvo's opinion was unsupported by his treatment notes and overall medical evidence of record; and the overall medical evidence was consistent with Dr. Genece's findings.  AR 101, 103.

In evaluating the State agency psychologists' opinions, the ALJ considered the required supportability and consistency factors.  AR 22.  The ALJ found the opinions were partially persuasive to the extent they indicated that Plaintiff could perform simple tasks and required limited public contact, and she concluded that such limitations were supported by the evidence that the State agency psychologists reviewed.  AR 22; *see* AR 74-76 (Dr. Genece's discussion of information from the record that supported her findings); AR 101, 103 (Dr. Schwartz's explanation of how he considered record evidence in making his findings)).  However, the ALJ found the opinions were not consistent with testimonial evidence suggesting Plaintiff needed greater restrictions in interacting with others and a low-stress work environment.  AR 22.  Accordingly, while the ALJ's RFC finding was consistent with their opinions, the ALJ also adopted somewhat greater restrictions in Plaintiff's favor.

17

United States District Court
Northern District of California

Plaintiff contends the ALJ erred in evaluating the State agency psychologists' findings, arguing the ALJ's reliance on these opinions is contrary to the Commissioner's own regulations that provide an examining medical source may have a better understanding of a claimant's impairment than a medical source who performs only a paper review of a claimant's case.  Pl.'s Mot. at 9 (citing 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v)).  However, her contention is based on a misreading of the relevant regulations.  Rather than focus on the factors of supportability and consistency—the most important factors under the regulations—Plaintiff argues the Court should give greater emphasis to a factor the ALJ did not need to address in her decision: Plaintiff's relationship with Drs. Ritvo and Martin.  Her focus on this factor is misplaced because any semblance of a hierarchy among medical opinions based on the relationship between a claimant and a doctor has been eliminated as of March 27, 2017.  *See* 20 C.F.R. § 404.1520c(a) (2017); 82 Fed. Reg. at 5852 53.  In fact, the relationship between a claimant and a doctor is of such diminished importance under the revised regulatory scheme that ALJs are not required to discuss that factor at all, except under circumstances not present here.  20 C.F.R. § 404.1520c(b)(2)-(3).[5]  Plaintiff's contentions lack merit because the ALJ appropriately articulated how persuasive she found the medical opinions based on the factors of supportability and consistency.

Plaintiff also faults the ALJ for including additional RFC limitations—which actually

---

[5] (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

1   benefitted her—beyond those assessed by the State agency psychologists.  Pl.'s Mot. at 9-10.

2   However, RFC is an administrative finding by the ALJ based on the record as a whole, not a

3   medical determination by a physician.  *See* 20 C.F.R. §§ 404.1545(a)(1), 404.1546; *Vertigan v.*

4   *Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not

5   the claimant's physician, to determine residual functional capacity.").  Neither the regulations nor

6   the Ninth Circuit require an RFC finding to match a medical opinion.  *See, e.g., Magallanes v.*

7   *Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ need not agree with everything contained in a

8   physician's opinion and can consider some portions less significant than others when evaluated

9   against the other evidence of record).

10           Contrary to Plaintiff's contention that "there is no evidentiary basis for the ALJ's [RFC]

11   finding" (Pl.'s Mot at 10), the RFC assessment was consistent with the State agency

12   psychologists' findings—simply more restrictive.  Further, the ALJ included additional RFC

13   limitations based on testimonial evidence suggesting Plaintiff needed greater restrictions in

14   interacting with others and a low-stress work environment.  AR 22; *see, e.g.*, AR 19-20

15   (summarizing testimony, including poor stress tolerance, isolation, and fear of the public); AR 274

16   (stress triggered Plaintiff's symptoms and she did not get along well with authority figures when

17   symptomatic); AR 282 (Plaintiff did not handle stress well, did not get along with authority

18   figures when having symptoms, and was concerned about being watched by the public); *see also*

19   Pl.'s Mot at 2 (acknowledging that Plaintiff's symptoms were triggered by stress)).  The ALJ's

20   RFC finding was thus reasonable and supported by record evidence.

21           In sum, because the ALJ appropriately evaluated the medical opinions, the Court must

22   affirm.

23   **C.**      **Testimony**

24           **1.**      **Plaintiff's Testimony**

25           At her hearing, Plaintiff testified she had earned an AA at Diablo Vista College less than

26   two years ago.  AR 38.  She drove a car but only about once a week because of her fear of the

27   public.  AR 41.  She saw her psychiatrist once a month but when her symptoms were severe she

28   saw him up to three or four times a week.  *Id.*  She had good days and bad days, with bad days

United States District Court
Northern District of California

19

about twice a month where she mainly did nothing, usually forgot to eat and her sleep was irregular.  AR 42.  On such days, she scratched her face and her body, and she could not sleep because of the thoughts in her head, occasionally suicidal thoughts.  AR 42-43.  She estimated she would have a really hard time getting out of the house about three days a month.  AR 44-45.  On average days, she still had problems focusing.  AR 45.  Sometimes she forgot to eat and do chores, she did not get dressed every day and did not bathe herself every day.  *Id.*  She had problems with communication and got off track when talking to her mom.  AR 48.  It was easier at the beginning of the day but as the day goes on it was harder to remember things.  *Id.*  When her attorney asked how she managed with her last class college, Plaintiff responded she almost failed it but sought extra help from her teacher and got a grade of C.  AR 49.  She drove herself to class.  *Id.*

When the ALJ asked Plaintiff why she could not work if she was able to identify a problem and correct it, Plaintiff responded a job usually creates stress from depression, which leads to no sleep, which leads to delusions.  AR 49-50.  She had a seasonal part-time job at Macy's where she sorted out clothing by size, but she had problems at Macy's because she left work early but did not recall whether she quit or the position ended.  AR 50, 54.  She worked as a cashier at BevMo! but was fired because she was unable to carry out the job requirements, fell asleep and did not ID someone when she was supposed to.  AR 51-52.  At her BevMo! job, she just rang up the customers and did not really have conversations.  AR 52.  This job was part time but she had fallen asleep a few times in the car while on break.  AR 54.

Plaintiff had an altercation with someone who was stalking her.  AR 52.  She had cut off most of her friends and had problems communicating with strangers.  AR 53.  She did not trust anyone and thought the public was watching.  *Id.*  Her fears about her family being harmed still lingered.  *Id.*  When she had these feelings she isolated herself in her room.  *Id.*  When she had delusions she thought she had HIV or someone was out to get her family or the public was after her.  AR 56.

Plaintiff's doctor encouraged her to get out and garden - sometimes she did well with this and some days she did not.  *Id.*  If she had an episode, it lasted a few weeks but the recovery process could last up to four months, during which she was still delusional and not functioning

properly.  AR 57.  Her doctor tried switching her medications to help her, and she had the least amount of side effects with the medications she was currently taking.  AR 58.  Her episodes were different than the bad days she had every month.  *Id.*  While having an episode she could not go out for a few weeks and her mom drove her to most everything.  AR 58-59.  She did not know what precipitated her last episode but she had become suicidal and all the symptoms from her first episode returned.  AR 60.  She believed her illness stunted her health and happiness permanently.  AR 60.  She wanted to have goals in her life and a future and did not want her illness to hijack the plans she had made for herself.  AR 61.  She wanted her doctor to help her so she could get better and work.  AR 61.

### a.  Legal Standard

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis.  'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  And second, "if the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Vasquez*, 572 F.3d at 591 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  "At the same time, the ALJ is not required to believe every allegation of [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  *Molina*, 674 F.3d at 1112 (citation and internal quotations omitted).  Along the same lines, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability."  SSR 16-3P, 2016 WL 1119029, at *2.

In determining whether an individual's symptoms will reduce her capacities to perform work-related activities or abilities to function, "the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and

1    whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*,

2    674 F.3d at 1112 (citations and internal quotation marks omitted).  "[I]f an individual's statements

3    about the intensity, persistence, and limiting effects of symptoms are inconsistent with the

4    objective medical evidence and the other evidence, [the ALJ] will determine that the individual's

5    symptoms are less likely to reduce his or her capacities to perform work-related activities or

6    abilities to function independently, appropriately, and effectively in an age-appropriate manner."

7    SSR 16-3p, 2016 WL 1119029, at *7.

8                  **b.       Analysis**

9           While the ALJ recognized that Plaintiff had limitations from her impairments and assessed

10   an RFC with significant mental limitations, she found the evidence did not show Plaintiff was as

11   limited as she alleged.  In reaching this conclusion, the ALJ first considered the objective medical

12   evidence.  The ALJ noted that Drs. Ritvo and Martin did not report findings consistent with

13   Plaintiff's allegations of disabling symptoms, such as her testimony that she scratched herself, was

14   unable to concentrate or follow conversations, had impaired memory, and had significant

15   difficulties interacting with others.  AR 20-21.  Dr. Ritvo's records did not document self-harm or

16   the other limitations Plaintiff alleged, and instead indicated that she was calm, clear, pleasant, and

17   "more at ease" *Id.*; *see, e.g.*, AR 376 (Plaintiff was calm and clear); AR 389 (Plaintiff was calm

18   and comfortable); AR 394 (Plaintiff was calm and pleasant); AR 398 (Plaintiff was lighter,

19   happier, relaxed, active, and engaged); AR 403 (Plaintiff was happier, more at ease, and had a

20   bright affect)).  Dr. Martin also reported many benign findings: Plaintiff was fully oriented; her

21   eye contact was good; her attention, insight, and judgment were fair; her memory and fund of

22   knowledge were adequate; she could perform simple calculations; and her thought processes were

23   linear, organized, and goal directed.  AR 22, 427.  In evaluating Plaintiff's testimony, the ALJ's

24   consideration of this objective medical evidence was appropriate.  *See* 20 C.F.R. § 404.1529(c)(2)

25   (when evaluating symptoms, ALJ considers consistency with objective medical evidence);

26   *Molina*, 674 F.3d at 1113 (in discounting claimant's allegations of an inability to interact with

27   others, ALJ appropriately considered her presentation and demeanor on mental status

28   examinations, where she was "alert and oriented, maintained good eye contact, did not appear

United States District Court
Northern District of California

United States District Court
Northern District of California

excessively anxious, spoke coherently and fluently, smiled appropriately, and was congenial").

The ALJ also identified other inconsistencies that undermined Plaintiff's allegations. *See* 20 C.F.R. § 404.1529(c)(3) (in addition to considering objective medical evidence, ALJ considers whether and to what extent the claimant's subjective statements are consistent with other evidence in the record). In this regard, the ALJ observed that Plaintiff retained abilities and engaged in activities that were inconsistent with her allegations, such as her testimony that she did not leave the house, could not concentrate or follow conversations, had impaired memory, and had significant difficulties interacting with others. AR 20-21. Specifically, the ALJ noted that Plaintiff completed an associate's degree, for which she attended classes online and in person, requested a teacher's assistance proactively, and passed her classes without special accommodations. AR 20, 38-39, 48-49. Additionally, Drs. Ritvo and Martin did not indicate that Plaintiff had any difficulties in her interactions with them, just as Plaintiff acted appropriately with agency personnel for her disability claim. AR 21 (ALJ noted Plaintiff had no difficulty at her hearing); AR 74-75 (Dr. Genece observed field office employees made unremarkable observations, such as Plaintiff had no problems answering questions).

Moreover, as the ALJ observed, treatment records indicated that Plaintiff exercised, gardened, helped her parents with projects, worked for short periods, and traveled. AR 20-21; *see, e.g.*, AR 383 (Plaintiff was helping at the family business, had worked at a wedding, and was gardening); AR 394 (Plaintiff was exercising, gardening, and helping her parents with projects); AR 398 (Plaintiff had returned from a good trip and was planning another one); AR 399 (Plaintiff was gardening and taking a trip to Germany); AR 403 (Plaintiff had a wonderful trip to Germany); AR 404 (Plaintiff was moving into a casita in the back yard, socializing more, and helping at a florist)). *See Molina*, 674 F.3d at 1112-13 (ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms").

As an additional basis for discounting Plaintiff's complaints, the ALJ considered the treatment she received. AR 20-21. The ALJ noted that Dr. Ritvo occasionally reported mood impairment, paranoia, and isolation, but overall, his treatment records showed Plaintiff was generally stable with medication management. AR 20-21; *see, e.g.*, AR 376 (Plaintiff was

23

"stabilizing well" on medication, she was calm and clear, and she felt more optimistic); AR 394 (medications were working well; Plaintiff was exercising, gardening, and helping her parents; she was calm, pleasant, and sleeping okay, and she was "stable on current medication regimen"); AR 398 (medications were working well, Plaintiff was in good spirits, clear headed, lighter, and happier; she was writing more; she had returned from a good trip and was planning another one; she was stable, relaxed, active, engaged, and bright; and she was sleeping well); AR 399 (Plaintiff was doing well on medications, she was enjoying gardening, and she was taking a trip to Germany); AR 404 (medications were working well, Plaintiff moved into a casita in the back yard, she was socializing more, and she was helping out at a florist for short periods)).  The ALJ appropriately considered Plaintiff's responsiveness to treatment in discounting her allegations.  20 C.F.R. § 404.1529(c)(3); *Mead v. Astrue*, 330 F. App'x 646, 648 (9th Cir. 2009) (ALJ properly discounted claimant's self-reports where treatment notes indicated that her depression had improved, she responded well to treatment, and she could perform activities of daily living) (citing *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002)).

Plaintiff argues the ALJ did not sufficiently identify the testimony that the ALJ discounted. Pl.'s Mot. at 11.  This is incorrect because the ALJ discussed Plaintiff's allegations and reviewed whether and to what extent evidence supported such allegations.  AR 20-21.  As Plaintiff acknowledges, the ALJ also found Plaintiff's allegations were inconsistent with Dr. Ritvo's records and Dr. Martin's report, which reflected largely unremarkable mental status findings.

Plaintiff also argues the ALJ should have not considered her hearing demeanor.  Pl.'s Mot. at 11-12.  However, such observations are explicitly permissible under the regulations.  *See* 20 C.F.R. § 404.1529(c)(3) ("We will consider . . . observations by our employees and other persons" when evaluating testimony); *Matney on Behalf of Matney*, 981 F.2d at 1020 (when assessing symptom testimony, the ALJ may consider the claimant's "demeanor and appearance at the hearing").  Plaintiff cites *Taylor v. Commissioner of Social Security Administration*, 659 F.3d 1228, 1235 (9th Cir. 2011), but her reliance on *Taylor* is misplaced because that case addressed an issue not present here: whether an ALJ could rely on his observations about a claimant's hearing presentation to discount a physician's opinion.

In sum, the ALJ properly considered the inconsistencies of record in discounting Plaintiff's allegations of disabling mental health symptoms. *See, e.g., Yacoobali v. Saul*, 2020 WL 1322971, at *5-6 (N.D. Cal. Mar. 20, 2020) (ALJ appropriately discounted symptom testimony where claimant's mental status examinations often revealed normal findings, the claimant could travel, drive, and attend school, and his symptoms improved with treatment) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)).  Because the ALJ's findings were reasonable and well supported, the Court must affirm.

### 2. Third Party Statements

The record includes a written statement from Plaintiff's mother, dated December 14, 2017. AR 268-75.  The ALJ found this statement "generally consistent" with Plaintiff's testimony and statements of record, but "to the extent that [her mother's] statements suggest that the claimant cannot work in any capacity, those statements are not entirely consistent with the medical and other evidence in the record."  AR 20.  In the two sentences Plaintiff devotes to this statement, she argues the ALJ's reasoning "is inadequate because the ALJ failed to give legally adequate reasons for rejecting Plaintiff's testimony, therefore, any consistency with [her mother's] statement is of minimal relevance.  The ALJ also found [her mother's] statement was inconsistent with the medical evidence, which is inadequate for the same reasons was inadequate for rejecting Plaintiff's testimony."  Pl.'s Mot. at 12.

In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citation omitted).  Such testimony is valuable precisely because it provides additional information that is not necessarily reflected in the medical records, including how an individual is able to function in the community and with what level of support. *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 975-76 (9th Cir. 2000).  Thus, "[i]n evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [them]."  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  However, the 2017 regulations adjusted requirements for ALJs' consideration of nonmedical evidence as well.  Under the 2017

regulations, the ALJ is "not required to articulate how [they] considered evidence from nonmedical sources."  20 C.F.R. §§ 404.1520c(d), 416.920c(d).  "Consequently, there is an argument that the ALJ is no longer required to provide "arguably germane reasons" for disregarding such statements, as the Ninth Circuit has traditionally required."  *Gretchen S. v. Saul*, 2020 WL 6076265, at *8 (D. Or. Oct. 15, 2020) (under new regulations, "the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony."); *Caleb H. v. Saul*, 2020 WL 7680556, at *8 (E.D. Wash. Nov. 18, 2020) ("[T]the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony.").

Here, even if no longer required to do so, the ALJ provided germane reasons.  The ALJ accepted most of Plaintiff's mother's statement, rejecting only the suggestion that Plaintiff could not work in any capacity.  In doing so, the ALJ found such limitations were inconsistent with the medical evidence of record.  Inconsistency with the medical evidence of record constitutes a germane reason to discount lay witness testimony.  *See id.*; *Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Further, "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness."  *Molina*, 674 F.3d at 1114 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (holding that because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")); *Devon R. M. v. Saul*, 2019 WL 3555250, at *11 (N.D. Cal. Aug. 5, 2019) (finding no error where the ALJ afforded little weight to plaintiff's husband's opinion because it "was duplicative of Plaintiff's testimony, and thus also contradicted by medical evidence and medical opinions," and was therefore "a valid cross-application of his reasoning for questioning Plaintiff's credibility.").

The ALJ explained that Plaintiff's mother described activities and abilities that largely mirrored Plaintiff's testimony.  AR 20.  As discussed above, the ALJ provided sufficient reasons for rejecting Plaintiff's testimony.  Because her mother did not testify to any limitations beyond those described by Plaintiff herself, the Court finds the ALJ provided sufficient reasons for

United States District Court
Northern District of California

affording little weight to this portion of Plaintiff's mother's statement.  *See Valentine*, 574 F.3d at 694; *Jenkins v. Saul*, 2020 WL 5760357, at *4 (N.D. Cal. Sept. 28, 2020) ("[The lay witness] did not testify to any limitations beyond those described by [plaintiff] herself.  'In such a situation, the ALJ also gives germane reasons for rejecting other lay witness testimony where it is found to be similar to claimant's.'") (quoting *Bennet v. Colvin*, 202 F. Supp. 3d 1119, 1130-31 (N.D. Cal. 2016)).  Accordingly, the Court finds the ALJ provided sufficient reasons for affording little weight to this portion of Plaintiff's mother's statement, and the decision must therefore be affirmed.

## VI.    CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's cross-motion.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: August 31, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California